UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**BRENDA V.,**[1]

    **Plaintiff,**

v.

Case No. 3:20-cv-00293
Magistrate Judge Norah McCann King

**COMMISSIONER OF SOCIAL SECURITY,**[2]

    **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Brenda V. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications. This matter is now before the Court, with the consent of the parties, *see Joint Consent of the Parties*, ECF No. 5, on *Plaintiff's Statement of Errors*, ECF No. 12, *Defendant's Memorandum in Opposition*, ECF No. 14, *Plaintiff's Reply*, ECF No. 15, and the *Certified Administrative Record*, ECF No. 9. After careful consideration of the entire record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court grants *Plaintiff's Statement of Errors* and reverses the Commissioner's decision and remands the action for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* S.D. Ohio General Order 22-01.
[2] Kilolo Kijakazi is the Acting Commissioner of Social Security. *See* Fed. R. Civ. P. 25(d).

1

I.   PROCEDURAL HISTORY

Plaintiff protectively filed her applications for disability insurance benefits and supplemental security income on March 31, 2017, alleging that she has been disabled since January 15, 2016, based on a number of physical and mental impairments. R. 22.[3] The applications were denied initially and upon reconsideration and Plaintiff requested a *de novo* hearing before an administrative law judge. R. 184-85. Administrative Law Judge ("ALJ") Deborah F. Sanders held a hearing on March 13, 2019, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 43-81. In a decision dated July 23, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from January 15, 2016, her alleged disability onset date, through the date of that decision. R. 22-35. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on May 20, 2020. R. 1-6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 23, 2022, the case was reassigned to the undersigned. ECF No. 17. The matter is ripe for disposition.

II.   LEGAL STANDARD

A.   Standard of Review

In reviewing applications for Social Security disability benefits, "[t]he Commissioner's conclusion will be affirmed absent a determination that the ALJ failed to apply the correct legal standard or made fact findings unsupported by substantial evidence in the record." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). The United States Supreme Court has explained the

---

[3] References to pages as they appear in the Certified Administrative Record will be cited as "R. __."

2

substantial evidence standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). In addition, "'[w]here substantial evidence supports the [Commissioner's] determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.'" *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'") (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). "Yet, even if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof through step four; at step

five, the burden shifts to the Commissioner." *Rabbers*, 582 F.3d at 652 (*citing Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the

plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III. ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 41 years old on January 15, 2016, her alleged disability onset date. R. 33. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 25.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: unspecified bipolar and related disorder; persistent depressive disorder with anxious distress; unspecified anxiety disorder; unspecified personality disorder; minor degenerative changes, lumbar; mild cervical spondylosis; and mild osteoarthritis of the left glenohumeral joint. *Id*. The ALJ also found that Plaintiff's substance abuse history, residuals of car accidents, obesity, and osteoarthritis of the knees were not severe impairments. R. 25-26.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 26.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations:

> [S]he is limited to the light exertional level being able to lift and carry up to 20 pounds occasionally and 10 pounds frequently; stand and/or walk about 6 hours in an 8 hour day; sit about 6 hours in an 8 hour day; frequently climb ramps and stairs, never ladders, ropes or scaffolds; occasionally stoop, kneel and frequently crouch and occasionally crawl; would be able to engage in occasional overhead reaching with the left upper extremity; never work at unprotected heights, around dangerous machinery, never operate a motor vehicle; perform tasks that would not require a production rate pace, and no strict production quotas and would be able to adapt to a relatively static or stable work environment defined as infrequent changes in the work duties; simple routine repetitive tasks; occasional interacting with coworkers and supervisors, but no tandem or shared tasks; occasional interaction with the public but not in a customer service capacity; should not work in an environment where alcohol is served or drugs are dispensed.

R. 28-9. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a bartender and server/waitress. R. 33.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.,* laundry worker, inspector/hand packager, and mail sorter—existed in the national economy and could be performed by Plaintiff. R. 34. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from January 15, 2016, her alleged disability onset date, through the date of the decision. *Id*.

Plaintiff's sole contention on appeal is that the ALJ erred by refusing to evaluate the opinions of two of her treating sources because the ALJ characterized—incorrectly, Plaintiff contends—the documents containing those opinions as illegible. She asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Statement of Errors,* ECF No. 12; *Plaintiff's Reply Brief,* ECF No. 15. The Acting Commissioner takes the position that, even if the documents at issue were not entirely illegible, any error on the ALJ's part in failing to consider the opinions contained in those documents was harmless because the RFC found by the ALJ was consistent with those opinions. *Defendant's Memorandum in Opposition,* ECF No. 14.

### IV.   RELEVANT EVIDENCE AND DISCUSSION

The record includes a July 2017 "Basic Medical" report from Amy Seese, D.O., one of Plaintiff's treating physicians, to the Ohio Department of Job and Family Services, R. 1986-87, and a July 2017 mental RFC assessment by Steven Mates, PM HNP, Plaintiff's treating psychiatric nurse practitioner, R. 1988-89. The poor quality of the documents was addressed at the administrative hearing:

>ALJ: [The documents are] very, very difficult to read, actually almost impossible to read. . . . If you have any of those that are legible, if you would resubmit them.
>
>ATTY: I will try and lighten them up and resubmit them, Judge. They came from the Department of Job and Family Services, all of them, if you note up at the top, and it seems like that's how they're coming in. I think they scan them into their system and they just sometimes they're so dark they're literally blacked out. I will try and lighten them up and have them resent to you.
>
>ALJ: Okay, thank you.

R. 65. Apparently, the duplicates submitted by counsel were also of poor quality. *See* R. 1991-92, 1993-94. In her decision, the ALJ made clear that she did not consider the opinions contained in those documents. R. 33 ("As to the limitations at Exhibits 33F and 36F (which are duplicative), these have not been considered due to the copy quality. Likewise, opinions at Exhibits 34F and 37F (which are also duplicative), are also poor quality, and have not been considered.").

In making a disability determination, an ALJ must consider "all evidence in [the] case record…." 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3). Plaintiff contends that the documents were at least partially legible and that the ALJ should have considered, at a minimum, those portions of the documents that could be made out. In particular, Plaintiff refers to Nurse Mates's opinion that Plaintiff was "markedly" impaired in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. *Plaintiff's Statement of Errors*, ECF No. 12, PageID# 2115 (citing R. 1993).

The Acting Commissioner apparently agrees that Nurse Mates's assessment is at least partially legible: "Mr. Mates found Plaintiff 'not significantly limited' or only 'moderately limited' in nineteen out of twenty functional areas." *Defendant's Memorandum in Opposition*, ECF No. 14, PgID# 2125-26. However, the Acting Commissioner argues that any error on the part of the ALJ in completely disregarding this assessment is nevertheless harmless:

> This assessment is entirely consistent with the decision of the ALJ, who assessed moderate limitations in three out of the four functional domains applicable to the paragraph B criteria of the mental disorder listings (interacting with others; concentrating, persisting, and maintaining pace; and adapting or managing herself. The ALJ went on to include significant nonexertional limitations in the RFC assessment, including no task requiring a production rate pace; no strict production quotas; a relatively static or stable work environment defined as infrequent changes in the work duties; simple, routine, repetitive tasks, occasional interaction with coworkers and supervisors; no tandem or shared tasks; and occasional interaction with the public.

Id. at PageID# 2126 (citation to the record omitted).

It is true that an ALJ's failure to evaluate a particular medical opinion may amount to harmless error "if the ALJ adopted the opinion or made findings consistent with that opinion." *Beery v. Comm'r of Soc. Sec.*, 819 F. Appx. 405, 408 (6th Cir. 2020) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 1003). However, this Court cannot conclude that the ALJ's failure to consider any portion of Nurse Mates's opinion can be regarded as harmless error.

At the administrative hearing, the vocational expert testified that a claimant who is off task more than ten percent of the workday would not be able to work, and that two or more absences from work, or more than de minimis tardiness, per month would be work-preclusive. R. 78. Plaintiff contends that, in light of this testimony, a "marked" limitation in Plaintiff's ability to maintain regular attendance and to be punctual within customary tolerances, as opined by Nurse Mates, was not consistent with the ALJ's RFC.

Under the circumstances presented in this case, the Court is not at all confident in its ability, or even its authority, to determine in the first instance whether the RFC found by the ALJ was in fact fully consistent with Nurse Mates's opined limitations. The Court therefore concludes that the matter must be remanded to the Commissioner for consideration in the first instance of Nurse Mates's opinions and their effect, if any, on Plaintiff's RFC. Moreover, the Court

8

concludes that remand is appropriate even if, on remand, the Commissioner again concludes that Plaintiff has the same RFC and is not entitled to benefits.

V. **CONCLUSION**

For these reasons, the Court **GRANTS** *Plaintiff's Statement of Errors,* ECF No. 12, **REVERSES** the Commissioner's decision, and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).

Date: August 22, 2022
*s/Norah McCann King*
NORAH McCANN KING
UNITED STATES MAGISTRATE JUDGE